O

# United States District Court
# Central District of California

| | |
|---|---|
| TONY SPEED,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF MORENO VALLEY,<br><br>    Defendant. | Case № 5:22-cv-00117-ODW (SHKx)<br><br>**ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANT'S MOTION TO DISMISS [10]** |

## I.  INTRODUCTION

Plaintiff Tony Speed brought suit in the Superior Court of California, County of Riverside, against his former employer, Defendant City of Moreno Valley ("City") for harm suffered in connection with the termination of his employment.  (Notice of Removal ("NOR") ¶ 1, ECF No. 1; NOR Ex. A ("Compl."), ECF No. 1-1.)  On December 23, 2021, Speed filed the operative First Amended Complaint ("FAC") in state court.  (NOR ¶ 10; *id.* Ex. I ("FAC"), ECF No. 1-9.)  Now, after having removed the case, Defendant moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).  (Mot. Dismiss FAC ("Motion" or "Mot."), ECF No. 10.)  The parties fully briefed the Motion, (Opp'n, ECF No. 12; Reply, ECF No. 13), and pursuant to FRCP 78 and Local Rule 7-15, the Court deemed the matter

appropriate for decision without oral argument. For the following reasons, the Motion is **GRANTED IN PART and DENIED AS MOOT IN PART.**

## II. BACKGROUND

For purposes of this Rule 12(b)(6) Motion, the Court accepts Speed's well-pleaded allegations as true. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Speed is an African American male who has an unspecified disability. (FAC ¶ 10.) On January 5, 2015, the City hired Speed as a Traffic Signal Technician. (FAC ¶ 9.) The principal events leading up to Speed's termination involve three City employees: Transportation Senior Signal Technician Ron Matthews ("Matthews"); Transportation Supervisor Scott Duncan ("Duncan"); and Traffic Signal Technician Terry Klaumanzer ("Klaumanzer"). (*See*, FAC ¶¶ 11–19.) The FAC does not indicate whether and to what extent these individuals were Speed's supervisees, colleagues, or supervisors.

Speed sets forth a series of chronological allegations describing the harassment and unfair treatment he received at work, as follows:

- <u>June 6, 2017</u>. While working, "Speed overheard . . . Matthews make a remark about 'roots & Kunta Kente.'" Speed asked Matthews what he had said. Matthews replied he needed the jack hammer to get rid of roots, and then repeated the phrase, 'Roots, Kunta Kente.'" (FAC ¶ 11.)
- <u>June 6, 2017</u>. At the jobsite, Speed "overheard Matthews say, 'Look how many of them there [are]; there's so many Mexicans. They're everywhere; they call this place "Morenexico."'" Duncan and Klaumanzer "were present at the time, but none of these men saw that Speed could overhear the comments." (FAC ¶ 12.)
- <u>June 20, 2017</u>. "Speed received an incident report for damaging the front passenger bin on a new City truck. While filling out the incident report, Duncan told Speed he was going to write him up for not paying attention on the

job, despite not being at the location when the incident took place. Duncan also told Speed he had 'his head up his ass.'" (FAC ¶ 13.)

- June 29, 2017. "Duncan used the term 'yessum' with a southern accent when talking to Speed." (FAC ¶ 14.)
- August 1, 2017. While working on a digging job, "Duncan instructed Klaumanzer to stop digging and for Speed to dig instead. Speed began digging while Duncan sat in front of him and watched. Duncan would not let any of the other employees assist Speed." (FAC ¶ 15.)
- August 5, 2017. While fixing a traffic light, Speed "called Klaumanzer for help. Klaumanzer began talking through certain steps. Speed said he had already completed those steps, to which Klaumanzer responded angrily and said Speed had been acting differently lately." (FAC ¶ 16.)
- August 11, 2017. "Matthews called Speed's sister to tell her he had been in a motorcycle accident even though Speed was in no such accident. Speed reported the incident to Duncan," but Duncan did not take action. (FAC ¶ 17.)
- August 11, 2017. "Duncan falsely wrote Speed up for being a no-call and no-show to work . . . . Human Resources later removed the write-up from Speed's file but this harassment was never explained." (FAC ¶ 18.)
- August 17, 2017. "Speed found a knife in his work mail box. Duncan, Matthews, and Sign and Striping Technician Brandon Miranda admitted to putting the knife in his work mail box. Speed was placed on administrative leave on August 23, 2017, while the City conducted an internal investigation." (FAC ¶ 19.)

Thereafter, from November 16, 2017, through November 27, 2017, Speed took leave due to his disability. (FAC ¶ 21.) At some point around this time, Speed apparently took leave pursuant to the California Family and Medical Leave Act ("FMLA"); it is unclear whether the November 16–27 leave is the FMLA leave to which the FAC refers. (*See* FAC ¶ 22.)

On December 19, 2017, Speed filed an administrative charge against the City with the California Department of Fair Employment and Housing ("DFEH"). (FAC ¶ 27.) In this first DFEH Charge, Speed accused the City of race-based harassment, race-based discrimination, retaliation for having requested disability leave, and disability-based harassment. (Req. Judicial Notice[1] ("RJN") Ex. 1 ("First DFEH Charge"), ECF No. 11.)

On January 4, 2018, the City terminated Speed's employment for the "pretextual reason of being absent without leave on December 19, 2017, through December 25, 2017." (FAC ¶ 23.) Speed also alleges that, prior to this, on December 21, 2017, he was placed on unpaid leave, but it is unclear whether and how this allegation relates to his allegation that the City's reason for termination was his December 19–25 absence without leave. (*See* FAC ¶ 22.) Speed alleges that "[t]he true reason the CITY terminated Speed's employment was because of his race, in retaliation for opposing race discrimination and harassment and in retaliation for taking [FMLA] leave." (FAC ¶ 23.)

On October 6, 2019, Speed filed a second DFEH Charge, accusing the City of retaliation for exercising FMLA rights and for disability discrimination. (RJN Ex. 3 ("Second DFEH Charge"), ECF No. 11.)

On October 6, 2021, Speed brought suit in state court, and on December 23, 2021, he filed the operative FAC, setting forth claims for (1) harassment under the California Fair Employment and Housing Act ("FEHA"); (2) discrimination under FEHA; (3) retaliation for exercising FMLA rights; and (4) violations of 42 U.S.C.

---

[1] The City requests judicial notice of the two complaints Speed filed with the DFEH and the two respective Right-to-Sue Notices the DFEH sent Speed. (Req. Judicial Notice, ECF No. 11.) Speed does not object to the request, and judicial notice appears proper. *See, e.g., Minor v. FedEx Off. & Print Servs. Inc.*, 78 F. Supp. 3d 1021, 1027 (N.D. Cal. 2015) (noting "records of administrative agencies," including those of the DFEH, are "proper subjects of judicial notice"). The City's Request for Judicial Notice is **GRANTED**. (ECF No. 11.)

§ 1981. The City removed the case to district court on the basis of federal question jurisdiction. (NOR ¶ 11.) This Motion followed.

### III. LEGAL STANDARD

A court may dismiss a complaint under FRCP 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2) by setting forth a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) ("[Leave to amend] is properly denied . . . if amendment would be futile.").

## IV. DISCUSSION

Speed fails to allege facts sufficient to state a § 1981 civil rights claim as he characterizes that claim, and accordingly, the Court dismisses the § 1981 claim with leave to amend. Without an active, well-pleaded federal claim to anchor the case, the Court declines at this juncture to exercise supplemental jurisdiction and accordingly declines to proceed to the merits of Speed's three state-law claims. The Court accordingly dismisses those claims, without prejudice to re-pleading them as part of a set of revised allegations and a revised § 1981 claim.

### A.   Federal Civil Rights Violations (42 U.S.C. § 1981)

Speed's sole federal claim is brought pursuant to 42 U.S.C. § 1981. "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship." *Lambert v. Tesla, Inc.*, 923 F.3d 1246, 1248 (9th Cir. 2019) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)). The statute provides in part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."

42 U.S.C. § 1981(a). The purpose of § 1981 is to enforce the Fourteenth Amendment to the United States Constitution, *Davis v. Foreman*, 251 F.2d 421, 422 (7th Cir. 1958), by "proscrib[ing] discrimination in the making or enforcement of contracts against, or in favor of, any race," *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003).

*See Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1122 (9th Cir. 2008) (noting § 1981 protects right to "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship"). Of particular relevance here, § 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285 (1976); *see Magana v. Commonwealth of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997) ("Section 1981 . . . provides a federal remedy against race-based employment discrimination in the private and public sectors." (citing *Runyon v. McCrary*, 427 U.S. 160, 168–72 (1976)).)

In the FAC, under the heading for this claim, Speed alleges that "Defendant terminated Plaintiff's employment because of his race, African-American, and/or because he opposed racial harassment and discrimination." (FAC ¶ 64.) With this allegation, Speed accuses the City of (1) race-based discrimination and (2) retaliation. The City's chief challenge to this claim is that Speed fails to plead facts showing that his "race was the but-for cause of the City's decision to terminate" his employment. (Mot. 23.)

In response to this challenge, Speed asserts that he "has pled sufficient facts that he was terminated because of his race *and* for opposing racial harassment," and that his termination is actionable in either sense under § 1981. (Opp'n 6 (emphasis added).) The City asserts that this is a "complete shift" from what Speed contended in his Second DFEH Charge, (Reply 12), but this observation is mostly irrelevant because the viability of a federal § 1981 claim is independent of whether a plaintiff followed state-law administrative procedures for related claims before filing their federal claim in court. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (observing § 1981 does not require any exhaustion of administrative remedies); *see also Henderson v. Aria Resort & Casino Holdings, LLC*, No. 2:21-cv-0280-JAD-NJK, 2022 WL 1785433, at *3 (D. Nev. May 31, 2022) (same); *cf. Fed. of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996)

("Private causes of action against state actors who impair federal civil rights have not been traditionally relegated to state law.").

Accordingly, in determining whether Speed states a § 1981 claim, the Court accepts, for the purpose of this Motion, Speed's characterization of the claim as one for (1) race-based discrimination and (2) retaliation for opposing race harassment. For the following reasons, however, Speed fails to allege facts sufficient to support a § 1981 claim under either of these theories.

*1.     Race discrimination*

"Most § 1981 actions involve employment discrimination claims, and courts analyze such cases employing the same statutory scheme used in cases brought under Title VII." *Balt.-Clark v. Kinko's Inc.*, 270 F. Supp 2d 695, 698–99 (D. Md. 2003); *Sanders v. City of Phoenix*, No. CV06-1644-PHX-GMS, 2008 WL 11338788, at *5 (D. Ariz. Apr. 10, 2008) ("The same legal principles applicable to Title VII claims apply when analyzing claims for race discrimination under § 1981.")

Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 20003-2(a).  Thus, to obtain relief for employment discrimination, a plaintiff must plead and prove that (1) they belonged to a protected class; (2) they were qualified for their position; (3) they experienced an adverse employment action; and (4) similarly situated individuals outside the plaintiff's protected class were treated more favorably. *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000).

Under California's FEHA, the first three elements for employment discrimination are the same, and California cases frame the fourth element as requiring "some other circumstance suggests discriminatory motive." *Chisholm v. 7-Eleven, Inc.*, 383 F. Supp. 3d 1032, 1059 (S.D. Cal. May 23, 2019) (citing *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 355 (2000); *cf. Means v. City & Cnty. of S.F.*,

*Dep't of Pub. Health*, 749 F. Supp. 2d 998, 1004 (N.D. Cal. 2010) (analyzing Title VII, section 1981, and FEHA employment discrimination claims under singular framework). "Thus, a plaintiff must establish a causal nexus between the adverse employment action and her protected characteristic." *Chisholm*, 383 F. Supp 3d at 1059.

The Supreme Court recently confirmed that the but-for causation test applies to federal employment discrimination claims and that, to apply the test, the Court is to imagine the factual scenario *without* the putative causal event, and if the adverse employment action would not have taken place absent the causal event, the causal event is a but-for cause. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020).

Here, Speed's claim for § 1981 employment discrimination fails because his allegations are insufficient to support a causal nexus between his protected class and the adverse employment action. The causal nexus is weak for two overlapping reasons: first, a lack of specificity regarding who made the decision to terminate Speed's employment, and second, a lack of factual evidence linking the termination to his race.

First, in the FAC, Speed merely alleges the names and job titles of the key actors, sets forth factual allegations regarding misconduct by City employees, and proceeds to allege that the City fired him. Missing from these allegations is any indication (1) whether these key actors were Speed's supervisees, colleagues, or supervisors and (2) whether any of these people were involved in the decision to terminate his employment. Speed simply alleges his employment "was terminated by the CITY." (FAC ¶ 23.) Absent these details, any attempt on Speed's part to draw a connection between the allegedly race-related acts and his termination must be rejected as unreasonable and unsupported by the well-pleaded factual allegations.

Compounding this problem is the dearth of race-related acts alleged in the complaint. Of the nine chronological factual allegations Speed presents in support of

his discrimination claim, few in fact relate to race, and those that do are not relevant to the required causal nexus. First, the "roots & Kunta Kente" incident occurred between Speed and an apparently non-supervisory co-worker many months before Speed's termination. (FAC ¶ 11.) Nothing in the FAC suggests that any discrimination committed by this co-worker implies a discriminatory animus on the part of the individuals who ultimately decided to terminate Speed's employment, whether under a cat's paw theory or any other theory. (*See* Opp'n 7 (mentioning cat's paw theory).)

Second, the derogatory comment about Mexicans contributes nothing substantial to the causal nexus because Speed's allegations are that the City discriminated against him on the basis of *his* race, and Speed does not allege that he is Mexican. The weakness of this allegation is ultimately a "relevance issue," *Patterson v. Boeing Co.*, No. CV 16-7613-GW (SKx), 2018 WL 5937911, at *20 (C.D. Cal. Apr. 4, 2018), and even in Speed's best-case scenario, the incident holds no weight in Speed's prove-up of race discrimination against him.

This leaves one incident, on June 29, 2017, in which Duncan used the term "yessum" with a southern accent when talking to Speed.[2] (FAC ¶ 14.) This happened many months before Speed's termination, and, as discussed, Duncan's exact supervisory relationship to Speed is unclear. Speed asks the Court to extrapolate from this single event and threadbare set of facts that, in January 2018, when the City (not Duncan) terminated Speed's employment, it did so on the basis of Speed's race, and the City used his absence without leave as a pretext for the termination. This is an untenable inference, which the Court cannot reasonably make.

The remaining allegations are of workplace mistreatment, but without more facts tying the mistreatment to Speed's race, the mistreatment does not support a claim

---

[2] The additional allegation that "[t]his was not the first instance in which Duncan had spoken to Speed in this manner" is lacking in factual detail, is not well-pleaded, and is accordingly ignored for the purpose of this analysis. (FAC ¶ 14); *Sprewell*, 266 F.3d at 988.

for discrimination. Title VII "is not a general civility code for the American workplace," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and a plaintiff's "personal belief of discrimination, without any factual support, is insufficient to satisfy federal pleading standards," *Moralez v. Whole Foods Mkt. Cal., Inc.*, No. 14-cv-05022, 2016 WL 845291, at *2 (N.D. Cal. Mar. 4, 2016). "Rather, plaintiff must allege some facts that demonstrate that race was the reason for defendant's actions." *Williams v. Tobener*, No. C 16-02209, 2016 WL 5235039, at *2 (N.D. Cal. Sept. 22, 2016) (internal quotation marks and citation omitted); *see Mesumbe v. Howard Univ.*, 706 F. Supp. 2d 86, 92 (D.D.C. 2010) ("[P]laintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief." (quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990))); *see also Melendez v. Sunnyvale Life, Inc.*, No. 14-cv-1771-EJD, 2015 WL 3882966 (N.D. Cal. June 23, 2015) ("Plaintiff's suggestion that [Defendant's] employees were engaged in some type of racially-motivated 'set up' . . . is supported only by speculation."). Here, Speed alleges insufficient facts to demonstrate that race motivated any of the alleged mistreatment. Without such facts, nothing supports the conclusion that the City was motivated by race when, in January 2018, it ultimately terminated Speed's employment. For these reasons, Speed fails to state a § 1981 claim under a race discrimination theory.

2. *Retaliation for having opposed race harassment*

"Section 1981 prohibits retaliatory action motivated by racial discrimination." *Muldrew v. County of Fresno*, No. 1:09-cv-00023-OWW-DLB, 2010 WL 3294710, at *3 (E.D. Cal. Aug. 10, 2010); *see generally London v. Coopers & Lybrand*, 644 F.2d 811, 818 (9th Cir. 1981) (distinguishing retaliation based on racial animus from other types of retaliatory action), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012). To make out a prima facie case of retaliation, a plaintiff must establish that: (1) they engaged in a protected activity, such as the filing of a complaint alleging racial discrimination, (2) their employer subjected

them to an adverse employment action, and (3) "a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (discussing Title VII).

All the analysis above regarding a lack of causal link for the purpose of § 1981 discrimination applies equally to § 1981 retaliation; nothing in the FAC plausibly suggests *prohibited* reasons for terminating Speed's employment. Moreover, the only protected activity predating Speed's termination is the filing of the First DFEH Charge, (FAC ¶ 27), and Speed fails to allege with any sort of clarity or specificity that the City employees who ultimately decided to terminate Speed's employment (1) *knew* about the existence of the First DFEH Charge and its contents; and (2) *were motivated by* Speed's complaints about race harassment and discrimination in the First DFEH Charge when they made their decision.

As nothing in the FAC supports a causal nexus between the First DFEH Charge and Speed's termination, Speed fails to allege facts sufficient to state a claim for § 1981 race-related retaliation.

Accordingly, Speed fails to state a claim under § 1981. The City's Motion is **GRANTED** with respect to that claim, **with leave to amend** to cure the identified deficiencies. *Carrico*, 656 F.3d at 1008.

**B.     State-law claims (FEHA and CFRA); Supplemental Jurisdiction**

Remaining at issue are Speed's three claims brought under California state law. Ordinarily, courts in the Ninth Circuit decline supplemental jurisdiction and dismiss or remand state law claims after dismissing all claims over which the court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Applying this principle here, the Court will not wade into state-law issues unless and until Speed sufficiently pleads a federal claim to anchor the case in federal court. Should Speed choose to amend, he is **GRANTED leave to re-plead and/or amend** these claims in connection with his revised § 1981 claim. Should Speed choose not to amend, the Court will remand the remaining claims. In either case, a ruling on the remaining claims is not currently required, and the Court accordingly **DENIES** the Motion **AS MOOT** with respect to the state-law claims.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED IN PART and DENIED AS MOOT IN PART**, **with leave to amend** as provided herein. (ECF No. 10.) Plaintiff's § 1981 claim is dismissed, and the Court declines at this juncture to rule on the remaining claims. If Plaintiff chooses to amend, the amended complaint must be filed within **twenty-one (21) days** of the date of this Order, and the City's Answer or other response is due no later than **fourteen (14) days** following the filing of the amended pleading. If Plaintiff does not amend, then as of the lapse of the deadline to amend, the dismissal of the § 1981 claim shall convert to a dismissal with prejudice, in which case the Court will remand the state-law claims without further notice.

**IT IS SO ORDERED.**

June 29, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

13